Pfeifer, J.,
concurring in part and dissenting in part.
*373 {¶ 71} I concur in the majority’s judgment to reverse, in part, the order of the commission. I dissent only as to the amount of the attorney-fees sanction.
{¶ 72} Colleen Mary O’Toole exercised her right to appeal the decision of the five-judge commission in this case, and this court today holds that the rule she was charged with violating, Jud.Cond.R. 4.3(A), is unconstitutional in part, knocking out one of the two violations the commission had found that O’Toole had committed. That is an important holding and a win for O’Toole. But even as the majority cuts in half the number of violations, it keeps in place the amount of attorney fees she must pay, the $2,500 recommended by the three-member hearing panel and affirmed by the five-judge commission on the basis of two violations. I would cut the attorney-fees sanction in half.
{¶ 73} The complainant is himself responsible for most of the attorney fees expended in this case. He originally filed a 12-count grievance against O’Toole. The three-member probable-cause panel dropped nine of those counts at the probable-cause stage. One of the three remaining counts that were litigated at the panel hearing was dismissed by the panel after that hearing. Still another is dismissed by this court today. Would the case have even proceeded if the badge charge — the only legitimate charge in the complaint — had been the only one raised?
{¶ 74} Attorney fees were unnecessarily expended in this case. Three weeks before the grievance was filed in her case, the majority of a commission of 13 appellate judges found that Jud.Cond.R. 4.3(C) was unconstitutional as applied to then-Judge O’Neill in In re Judicial Campaign Grievance Against O’Neill, 132 Ohio St.3d 1472, 2012-Ohio-3223, 970 N.E.2d 973. Both this case and the O’Neill case involved the use of the term “judge,” and O’Toole was right to argue that the activity protected in O’Neill should be protected in her case, even though the violation in her case was repackaged as a Jud.Cond.R. 4.3(A) violation. This court has found that O’Toole was right to contest the rule’s constitutionality.
{¶ 75} I agree with the majority that O’Toole should not have worn the same name badge she had worn when she was a sitting appellate court judge. But as a violation of Jud.Cond.R. 4.3(A), that activity was not particularly egregious. At the time of the violation, O’Toole was a former judge, not a judge. But the word “Judge” on the badge is small — the “J” in the word measures about a quarter of an inch, and the rest of the letters in the word measure less than that, just over a sixth of an inch. A person would have to be in close proximity to O’Toole to even read the badge. Anyone who could read the badge would also be able to personally interact with O’Toole. There is no testimony that anyone ever heard O’Toole represent that she was currently sitting on the appellate bench at the time.
*374 {¶ 76} Jud.ConcLR. 4.3, for the most part, prohibits certain statements in situations that ensure wide distribution. The rule, in its admittedly nonexhaustive list of examples, refers to methods of communication with a much wider distribution potential than a name on a badge, including “campaign materials, * * * advertisements on radio or television or in a newspaper or periodical, electronic communications, a public speech, [or a] press release.” Jud.Cond.R. 4.3(A) speaks of “posting], publishing], broadcasting], transmitting], circulating], or distributing] information concerning the judicial candidate or an opponent.” Under a reading of Jud.Cond.R. 4.3(A) that stretches the rule to its limits, O’Toole, through means of her badge, a campaign material, transmitted to assorted people within a few feet of her the information that she was currently a judge. So the violation was not far-reaching or particularly damaging to her opponent.
{¶ 77} O’Toole has already paid a steep price, suffering public censure, which this court has determined today was only partly deserved. But that is the way of Gov.Jud.R. 11(5) — the process moves quickly from the panel to the commission to this court, and the results — right or wrong — are publicized along the way. The Board of Commissioners on Grievances and Discipline received Davis’s complaint letter on August 9, 2012. By October 6, 2012, the panel hearing was completed, a recommendation had been issued, and an article had appeared in the Cleveland Plain Dealer deriding O’Toole. The headline: “Even if it runs like a judge, it still may not be one.” Larkin, http://www.cleveland.com/opinion/index.ssP2012/10/if_ itj,uns_like_a_judge_it_sti.html (Oct. 6, 2012). After the five-judge commission ruled, a News-Herald headline read, “Appeals Court candidate Colleen O’Toole disciplined for campaign literature.” Read, http://www.news-herald.com/general-news/20121025/appeals-court-candidate-colleen-otoole-disciplined-for-campaign-literature (Oct. 25, 2012). The Youngstown Vindicator also mentioned O’Toole’s violations in an article about appellate court races. Runyan, Judge races abound in Trumbull, http://www.vindy.com/news/2012/oct/28/judge-raees-abound-in-trumbull (Oct. 28, 2012). In the heat of the campaign for a spot on the Eleventh District Court of Appeals, O’Toole was repeatedly maligned in newspapers covering the district.
{¶ 78} And that is just as James B. Davis, the complainant, would have it, because he was working as the alter ego of O’Toole’s opponent, Mary Jane Trapp. Davis, a longtime friend of Trapp and her husband, Mike Apicella, testified that Trapp and her husband “primarily drafted” the original grievance. He testified that since he had filed the grievance, his interactions with Trapp were “an almost constant process.” He testified that Trapp and her husband selected the attorneys to be used in the case and that it was his expectation that he would be reimbursed for any attorney fees he would have to pay. Apicella had even driven *375 him to the panel hearing. Trapp received an electoral advantage as the result of this case, much of it undeserved given today’s outcome.
Mary L. Cibella, for complainant.
Berkman, Gordon, Murray & DeVan, J. Michael Murray, and Raymond V. Vasvari Jr., for respondent.
{¶ 79} The five-judge commission ordered O’Toole to pay $2,500 of the attorney fees of her political opponent, based on its conclusion that O’Toole had committed two violations. Since O’Toole did commit one violation, I would find that the five-judge commission did not abuse its discretion in imposing a sanction of attorney fees. However, since the commission found two violations when there was only one, I would order the award of attorney fees to be reduced to $1,250.